UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LESMIR CORPORATION and STANLEY ROSEN,

Plaintiffs,

v.

HOUSTON CASUALTY COMPANY,

Defendant.

NO. 2:25-cv-462-RSL

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.    INTRODUCTION

This insurance coverage dispute arises from Houston Casualty Company's denial of coverage under an insurance policy issued to Lesmir Corporation. Dkt. 1. Before the Court are "Defendant's Motion for Summary Judgment" and "Plaintiffs' Cross-Motion for Partial Summary Judgment." Dkt. 25 and 28. Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the record, and the relevant legal authority, the Court finds as follows:

ORDER
 - 1

## II.    BACKGROUND[1]

Plaintiff Lesmir Corporation ("Lesmir") is a commercial real estate company managed by plaintiff Stanley Rosen, who also manages a number of Lesmir-affiliated entities. Defendant Houston Casualty Company issued two general partners liability policies to Lesmir for October 2019 to October 2020 (the "2019 Policy") and October 2022 to October 2023 (the "2022 Policy") (collectively, the "Policies"). Dkt. 12-1, 12-2.[2] The Policies are claims-made-and-reported policies under which the insurer does not assume a duty to defend but instead is obligated to reimburse covered "Loss," including defense costs, arising from a "Claim" first made and reported during the policy period for a "Wrongful Act," subject to the Policies' terms, conditions, retentions, and exclusions. Dkt. 12-1 at 4–9. The insurer's payment obligation applies only to "Loss" in excess of the applicable retention. *Id*. at 4. The parties do not dispute that Rosen qualifies as an insured under the Policies for purposes of this action.

The Policies contain several exclusions. Relevant here is the "Contract Exclusion," which provides that the insurer "shall not be liable to make any payment in connection with any Claim[] for the liability of any Insured(s) arising under any express contract or agreement, regardless of whether such liability is direct or assumed, unless such liability

---

[1] The parties agree that the material facts necessary for resolution of the cross-motions for summary judgment are undisputed. *See* Dkt. 28 at 2, Dkt. 32 at 7.

[2] The 2019 and 2022 Policies are materially identical with respect to the provisions relevant to the coverage dispute presented here. For ease of reference, the Court cites to the 2019 Policy unless otherwise noted.

ORDER
 - 2

would have existed without such contract or agreement." *Id*. at 12, (Section IV. F.) (bold omitted).

In August 2020, two investors in a Lesmir-affiliated company sent a letter to the other investors in the company in which they raised concerns regarding plaintiffs' financial practices, including the calculation of distributions, assessment of fees, and use of affiliated entities (the "August 2020 Letter"). The August 2020 Letter asserted that these practices may be inconsistent with the operating agreements that govern the parties' rights and obligations with respect to the affiliated entities. Plaintiffs tendered the August 2020 Letter to defendant. Defendant concluded that the Letter did not constitute a Claim for purposes of the 2019 Policy because the investors did "not make a demand for monetary or non-monetary relief." Dkt. 12-4 at 4 (bold removed).

Nearly three years later, on January 30, 2023, plaintiffs received a letter from three investors in Lesmir-affiliated companies (the "January 2023 Demand"). Dkt. 12-5. The January 2023 Demand alleged that Rosen had engaged "in a pattern of misconduct arising from the management and ongoing operations" of the affiliated companies for which Rosen is the manager and asserted that these actions breached the "respective operating agreements" and violated Rosen's fiduciary duties owed to the affiliated companies and its investors. *Id*. at 4-5. Plaintiffs tendered the January 2023 Demand to defendant. Defendant acknowledged receipt of the Demand, stated that it did not have sufficient information to complete its coverage analysis, requested additional information

ORDER
 - 3

regarding Rosen's role with the affiliated companies, and reserved its right to invoke the Contract Exclusion, among other coverage defenses. Dkt. 12-6 at 4. In May 2023, defendant approved defense counsel to represent Rosen with respect to the claims asserted in the January 2023 Demand but continued to reserve its rights under the Policy. Dkt. 12-7 at 1.

On August 7, 2023, the three investors initiated arbitration against Rosen (the "Arbitration Demand"). Dkt. 12-8. The Arbitration Demand alleged a pattern of misconduct arising from the management and ongoing operations of various Lesmir-affiliated companies and stated four causes of action, all sounding in contract. *Id*. at 12-14. The Demand did not assert a claim for breach of fiduciary duty.

Plaintiffs tendered the Arbitration Demand to defendant who acknowledged that it is a Claim under the Policies. Defendant further noted that because the allegations in the Arbitration Demand appeared "to share a common nexus of fact" with the matters submitted in the August 2020 Letter and the January 2023 Demand, defendant will "relate" the Arbitration Demand back to the 2019 Policy and handle it as a claim under that Policy. Dkt. 12-9 at 5-6. Defendant then denied coverage pursuant to the Contract Exclusion because the Arbitration Demand only asserted claims for breach of contract. *Id*. at 8.[3]

---

[3] Defendant provided several other bases on which to deny coverage, none of which is relevant to this lawsuit.

ORDER - 4

In May 2024, Rosen and the investors entered into a settlement agreement under which Rosen agreed to facilitate the sale of the investors' interests in the Lesmir-affiliated companies, and the investors agreed to release plaintiffs "from any and all claims, cross claims, demands, actions or causes of action known or unknown, which Claimants may now or ever have against [plaintiffs] that arise out of, or are in any way connected with, or in any way related to the Action, the Interests, or the Companies[]." Dkt. 27-1 at ¶ 4.

Thereafter, plaintiffs sought reimbursement for the defense costs they incurred in the arbitration. Defendant reaffirmed its denial of coverage for the Arbitration Demand. However, it acknowledged that the January 2023 Demand alleged breaches for both contract and fiduciary duty and that the claims related to the fiduciary duty allegations would not be precluded by the Contract Exclusion. Dkt. 12-11 at 4. Defendant noted that the Policy provides for allocation for costs incurred for covered and uncovered loss. *Id*. Therefore, it requested that plaintiffs provide copies of invoices for defense costs incurred between the January 2023 Demand and the Arbitration Demand. The net amount reflected in the invoices plaintiffs provided for that timeframe totaled $8,713.50.

Plaintiffs subsequently initiated this action, alleging claims for breach of contract, insurer bad faith, and violations of the Insurance Fair Conduct Act as well as the Washington Consumer Protection Act. Dkt. 1. Defendant counterclaimed seeking declaratory relief that there is no insurance coverage for the defense costs associated with

ORDER
- 5

the arbitration. Dkt. 12.

### III.   LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324. Where, as here, cross motions are at issue, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

ORDER
 - 6

## IV.    DISCUSSION

### A.    Washington Insurance Coverage Law

The parties agree that Washington law governs this dispute. Under Washington law, insurance policies are construed as contracts, and the court's primary objective is to ascertain and give effect to the intent of the parties as reflected in the policy language. *See Quadrant Corp. v. American States Ins. Co.*, 154 Wn.2d 165, 171 (2005); *Philadelphia Indem. Ins. Co. v. Olympia Early Learning Center*, 980 F. Supp. 2d 1266, 1270 (W.D. Wash. 2013). Defined terms in a policy "should be interpreted in accordance with that policy definition." *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wn.2d 567, 576 (1998). "Undefined terms are to be given their plain, ordinary, and popular meaning." *Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 627 (1994). If policy language is ambiguous, it is construed in favor of the insured. *Quadrant*, 154 Wn.2d at 172. Where, however, the language is unambiguous, the court must enforce the policy as written. *Quadrant*, 154 Wn.2d at 171.

Determining whether coverage exists under Washington law is a two-step process. *See McDonald v. State Farm Fire & Casualty Co.*, 119 Wn.2d 724, 731 (1992). In Step One, the insured bears the burden of establishing that the claimed loss falls within the scope of the policy's insured losses. *Id*. If that burden is met, the burden then shifts to the insurer in Step Two to demonstrate that the loss is excluded by specific policy language. *Id*.; *see also Probuilders Specialty Insurance Co. v. Coaker*, 145 F. Supp. 3d 1058, 1063

ORDER
 - 7

(W.D. Wash. 2015).

### B. Step One: Whether the Defense Costs Are within the Scope of Coverage

The Court begins with the first step—whether plaintiffs have met their burden to establish coverage. The parties do not contend that the relevant provisions of the 2019 Policy are ambiguous. Accordingly, the Court interprets the Policy according to its plain terms and enforces it as written. *See Quadrant*, 154 Wn.2d at 171. The relevant Policy provisions tie coverage to "Loss" arising from a "Claim," dkt. 12-1 at 4 ("The insurer shall pay … Loss which the Insured is legally obligated to pay and which arises from a Claim …."), and that "Loss" is defined to include "Costs, Charges and Expenses," which in turn means "reasonable and necessary legal fees and expenses … incurred by the Insured(s) in defense of any Claim," *id*. at 6-7 (bold removed). Read together, these provisions establish that defendant is liable for the defense costs at issue here if they (i) arise from a covered Claim and (ii) are incurred in defense of that same Claim. *See Quadrant*, 154 Wn.2d at 171 (under Washington law, courts construe insurance policies as a whole, giving effect to each provision).

Plaintiffs assert that the defense costs are a covered Loss because they "arise from" the fiduciary allegations asserted in the January 2023 Demand, and defendant has conceded that those allegations were covered under the 2019 Policy. In other words, plaintiffs contend that the relevant Claim for purposes of determining whether the defense costs are a covered Loss is the January 2023 Demand, not the Arbitration

ORDER
 - 8

Demand.

Plaintiffs' argument fails under the Policy's plain terms because they cannot establish that the defense costs were incurred in defense of the January 2023 Demand. To the contrary, the $332,981 in costs plaintiffs seek to recover were incurred only after the Arbitration Demand was filed. *See* Dkt. 30, Exs. A, B. The Arbitration Demand constitutes its own Claim—a separate proceeding initiated nearly seven months after the January 2023 Demand and asserting distinct causes of action. The parties' course of conduct confirms that distinction. When defendant acknowledged partial coverage for the January 2023 Demand and agreed to pay defense costs associated with the fiduciary duty allegations incurred before the arbitration was filed, plaintiffs submitted invoices for that period totaling approximately $8,000. Plaintiffs do not seek to recover those costs here. Instead, the costs at issue were incurred after the Arbitration Demand and in connection with defending that proceeding. That temporal and procedural separation confirms that the claimed Loss arises from the arbitration—*i.e.*, was caused by and incurred to defend that proceeding—rather than the earlier January 2023 Demand.

Plaintiffs, nevertheless, seek to link the defense costs incurred in defending against the Arbitration Demand to the fiduciary duty allegations in the January 2023 Demand by arguing that under Washington law, an insurer must provide coverage for all defense costs "reasonably related" to the defense of covered claims. According to plaintiffs, because the breach of contract claims alleged in the Arbitration Demand "mirrored …,

ORDER
 - 9

had a common nexus of fact, and shared the same legal defenses" as the breach of fiduciary duty claims alleged in the January 2023 Demand, "the defense costs incurred defending against the breach of contract claims were directly and reasonably related to the defense of the breach of fiduciary duty claims." Dkt. 28 at 1. On that basis, plaintiffs contend that the arbitration defense costs arise from and were incurred in defense of the January 2023 Demand.

Plaintiffs are correct that courts applying Washington law have, in limited circumstances, required insurers to bear the full cost of defending claims that are not independently covered where that work is "reasonably related" to the defense of covered claims. *See*, *e.g.*, *Nordstrom, Inc. v. Chubb & Son, Inc.*, 820 F. Supp. 530, 536 (W.D. Wash. 1992) (stating that "[n]o right of allocation exists for the defense of non-covered claims that are 'reasonably related' to the defense of covered claims."). But plaintiffs overread those decisions. The cases do not establish a freestanding rule that any defense cost "reasonably related" to a covered claim is recoverable. Rather, the cases reflect a much narrower situation—where defense costs were incurred in a single proceeding in which covered and uncovered claims were defended together and there was no reasonable way to segregate those costs. *See*, *e.g.*, *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1436 n.5 (9th Cir. 1995) (insurer was liable for all defense costs incurred in a single underlying action that asserted covered and uncovered claims because there was "no reasonable means of prorating the costs" between the claims based on attorney's

ORDER
 - 10

billing statements); *Prudential Prop. & Cas. Ins. Co. v. Lawrence*, 45 Wash. App. 111, 121 (1986) (insurer liable for entire cost of defense in a single action involving covered and uncovered claims where "there is no reasonable means of prorating the costs of defense between those items that are covered and those that are not covered"). Those cases do not support extending coverage to costs incurred in a separate proceeding involving only uncovered claims, even if the proceeding is "reasonably related" to a covered claim, particularly where, as here, the defense work is temporally and functionally distinct and readily segregable. To do so would be a significant expansion of the "reasonably related" principle that no Washington case has endorsed.

Telxon Corp. v. Federal Insurance Co. confirms this limitation. In *Telxon*, the Sixth Circuit rejected the insured's attempt to invoke the "reasonably related" rule and distinguished *Nordstrom* on its facts. 309 F.3d 386, 395 (6th Cir. 2002). The Sixth Circuit explained that *Nordstrom* involved a circumstance in which covered and uncovered liabilities were concurrent and "there was 'no reasonable means of prorating the costs'" based on the available billing records. *Id*. (quoting *Nordstrom*, 54 F.3d at 1436 n.5). By contrast, in *Telxon*, each defendant was represented by separate counsel, and the billing records provided a "crystal clear" basis for allocating costs between covered and uncovered matters. *Id*. In that circumstance, the Sixth Circuit concluded that the "reasonably related" principle had no role to play. Although *Telxon* does not apply Washington law, its reasoning is consistent with the principle that the "reasonably

ORDER
 - 11

related" doctrine is limited to situations in which defense work on covered and uncovered matters is so intertwined that it cannot practicably be segregated. That rationale does not extend to circumstances where the work is independently attributable to uncovered claims in a separate proceeding—even if those claims share a factual overlap with earlier covered allegations.[4]

So understood, Washington's "reasonably related" principle does not render defendant liable for the defense costs plaintiffs incurred in defending the Arbitration Demand. That is so for three independent reasons. First, as explained above, the arbitration was a separate proceeding, not a continuation of the January 2023 Demand. Second, even assuming the two matters shared a common factual nucleus, factual overlap alone does not alter the nature of the claims actually asserted. The arbitration pleaded only breach of contract claims; it did not assert breach of fiduciary duty. The Arbitration

---

[4] Plaintiffs' reliance on *Weinstein & Riley, P.S. v. Westport Ins. Corp.*, No. C08-1694-JLR, 2011 WL 887552 (W.D. Wash. Mar. 14, 2011), *aff'd*, 484 F. App'x 121 (9th Cir. 2012) does not change this analysis. In *Weinstein*, the court recognized that an insurer's obligation to pay defense costs may extend to work performed in a separate action "arising out of the same factual background" as a covered claim. 2011 WL 887552, at *22 (March 14, 2011). However, the court applied a standard drawn from *Continental Casualty Co. v. Board of Education of Charles County*, 489 A.2d 536 (Md. 1985) only because the parties had agreed to that approach. *Id*. at n.4. The court expressly noted that it was not clear that the *Continental Casualty* standard reflects Washington law. Against that backdrop, *Weinstein* does not establish a general rule under Washington law that fees incurred in a related but separate and uncovered proceeding are recoverable. Plaintiffs' reliance on *Public Utility Dist. No. 1 of Klickitat County v. International Ins. Co*., 124 Wn.2d 789, 810 (1994) fares no better. *Public Utility District* addressed allocation of a lump-sum settlement between covered and uncovered claims; it does not establish a rule permitting recovery of defense costs incurred in separate, wholly uncovered proceedings.

ORDER
 - 12

Demand does not reference fiduciary obligations, and the billing records plaintiffs submit in support of the $332,981 in defense costs likewise do not reflect work directed to defending fiduciary duty allegations. *See* Dkt. 12-8; Dkt. 30, Ex. B. Third, and relatedly, the "reasonably related" principle applies only where defense work is performed, at least in part, in defense of a covered claim such that the work cannot practicably be segregated. That circumstance is not present here. The costs at issue were incurred in defending a proceeding that asserted only uncovered claims and are therefore readily distinguishable from any costs incurred in response to the January 2023 Demand. Accordingly, the "reasonably related" doctrine does not permit recovery of the arbitration defense costs.

Nor does plaintiffs' separate argument—that the fiduciary duty claims remained "pending" and were never abandoned prior to the May 2024 settlement—alter this conclusion. Even accepting that the investors retained the right to assert fiduciary duty claims throughout the arbitration period, that fact does not establish that the defense costs incurred in the arbitration were directed toward defending those claims. The mere possibility that fiduciary duty claims could have been asserted, or that they remained theoretically viable during the same period, does not transform the costs of defending a contract proceeding into costs incurred in defense of a fiduciary duty claim. This conclusion is consistent even with the more insured-protective duty-to-defend framework. Under Washington law, an insurer's coverage obligations are determined by

ORDER
 - 13

reference to the allegations actually asserted in the operative complaint (or claim), construed in light of any facts known to the insurer. *See*, *e.g.*, *Woo v. Fireman's Fund Ins. Co.*, 164 Wn.2d 43, 52–53 (2008); *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760–61 (2002). Courts do not base coverage on unasserted or hypothetical theories of liability that might have been pleaded. *See Chicago Ins. Co. v. Center for Counseling & Health Res.*, No. C10-0705-RSM, 2011 WL 1221019, at *2 (W.D. Wash. Mar. 31, 2011) (quoting 44 Am. Jur. 2d Insurance § 1400 (2010) ("[h]ypothetical unpleaded claims that would arguably be within coverage … do not create 'potential coverage' entitling the insured to a defense.")). The Policy here is narrower still: it provides only for reimbursement of defense costs actually incurred in defending a covered claim and imposes no duty to defend. Accordingly, plaintiffs cannot recover costs based on claims that were never asserted and for which no defense was undertaken.

Plaintiffs' remaining arguments are similarly unpersuasive. They argue that defendant should be estopped from claiming that the breach of fiduciary duty claims are distinct from the breach of contract claims because defendant invoked the Policy's interrelated wrongful acts provisions to aggregate the August 2020 Letter, the January 2023 Demand, and the Arbitration Demand into a single claim. The Court is not persuaded. The Policy's aggregation provisions serve a specific and limited function: they determine when a claim is deemed made for purposes of identifying the applicable policy period and avoiding duplicative retentions. They do not define the substantive

ORDER
 - 14

scope of coverage for any particular demand or proceeding, and they do not merge the distinct allegations of separate demands into a single undifferentiated set of covered and uncovered theories. That defendant invoked those provisions to relate the Arbitration Demand back to the 2019 Policy period says nothing about whether the claims asserted in the Arbitration Demand are themselves covered. That question is governed by the nature of the claims asserted in that proceeding, not by their temporal relationship to earlier demands.

Plaintiffs' additional waiver and estoppel arguments do not alter the analysis. Plaintiffs contend that defendant is precluded from denying coverage based on its prior acknowledgment that the January 2023 Demand included covered fiduciary duty claims. But defendant's acknowledgment is not inconsistent with its current position that defense costs incurred as part of the arbitration are not covered. Plaintiffs' argument ultimately rests on the same premise the Court has already rejected—that factual overlap between the January 2023 Demand and the Arbitration Demand renders defense costs associated with the latter covered. As this Court has already explained, a plain reading of the Policy dictates that coverage turns on the claim for which defense costs were incurred, not on a generalized overlap with earlier allegations. Thus, plaintiffs' waiver and estoppel theories fail as a matter of law.

Succinctly stated, Plaintiffs' theory of coverage depends on attributing the defense costs to the breach of fiduciary duty allegations asserted in the January 2023 Demand.

ORDER
 - 15

The Court rejects that premise and concludes that the defense costs were incurred in defense of the Arbitration Demand, a separate Claim that did not assert fiduciary duty liability. Plaintiffs therefore must establish that the claimed Loss is covered as arising from that Claim. They have not carried that burden. Accordingly, plaintiffs have failed to meet their burden of establishing that the defense costs fall within the Policy's coverage. Plaintiffs' failure at Step One is dispositive. The Court therefore need not and does not reach the parties' arguments regarding whether the Contract Exclusion or its exceptions apply at Step Two. *See McDonald*, 119 Wn.2d at 731.[5]

### C.    Plaintiffs' Extracontractual Claims

Plaintiffs assert three counts for extracontractual relief under Washington law: violation of the Washington Insurance Fair Conduct Act ("IFCA"), insurer bad faith, and violation of the Washington Consumer Protection Act ("CPA"). *See* Dkt. 1 ¶¶ 47–63. Because defendant's denial of coverage for costs incurred in defending the Arbitration Demand was reasonable as a matter of law, each of those claims fails. *See Bancroft v.*

---

[5] Plaintiffs argue in the alternative that the Contract Exclusion's exception applies to the breach of fiduciary duty allegations in the January 2023 Demand because Rosen's fiduciary duties arise from RCW 25.15.038 rather than from the operating agreements. That argument goes to whether otherwise covered allegations would be excluded from coverage under the Policy—*i.e.*, a Step Two question. Even accepting plaintiffs' position that those allegations are not excluded, plaintiffs still must establish at Step One that the defense costs at issue were incurred in defense of those (purportedly covered) allegations. For the reasons explained above, they have not done so. The costs were incurred to defend the Arbitration Demand, a separate proceeding that pleaded only breach of contract. Because plaintiffs have not shown that the claimed defense costs arise from or were incurred in defense of the January 2023 Demand, the Court need not decide whether the Contract Exclusion or its exception would have applied to the fiduciary duty allegations in that earlier Demand.

ORDER
 - 16

*Minn. Life Ins. Co.*, 329 F. Supp. 3d 1236, 1257 (W.D. Wash. 2018), *aff'd*, 783 F. App'x 763 (9th Cir. 2019) (IFCA "does not create an independent cause of action … in the absence of any unreasonable denial of coverage or benefits"); *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560 (1998) (no bad faith where insurer relies on a reasonable policy interpretation); *HB Dev., LLC v. W. Pac. Mut. Ins.*, 86 F. Supp. 3d 1164, 1183 (E.D. Wash. 2015) (a reasonable basis for denying coverage is a complete defense to a CPA claim predicated on that denial (quoting *Rizzuti v. Basin Travel Serv. of Othello, Inc.*, 105 P.3d 1012, 1022 (Wash. Ct. App. 2005))).

## V.   CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Dkt. 25) is GRANTED. Each of the claims in the Complaint is dismissed with prejudice and the Clerk of the Court is directed to enter judgment for defendant and against plaintiffs on defendant's Counterclaims for declaratory relief. Plaintiffs' cross-motion for partial summary judgment (Dkt. 28) is DENIED. This matter is HEREBY DISMISSED.

Dated this 7th day of May 2026.

Robert S. Lasnik
United States District Judge

ORDER
 - 17